## ELLIS v. JEANS et al.

An instrument setting forth that A "has this day sold" a piece of land to B, for a sum of money then paid, and a further consideration agreed to be paid; and further providing that, on payment of said further agreed consideration, the said A "binds himself, his heirs, etc., to make a general warranty-deed of said land free and clear from all persons claiming through or under him:" *Held*, to be an executory contract for a deed, and not a present conveyance.

Although the word "sold" is used, it must be construed with the whole of the instrument to ascertain the intention of the parties. If the parties had considered it a present conveyance, they would hardly have omitted all express words defining the kind of estate intended to be conveyed, whether for years, for life, or in fee simple.

The grantor's relation to the land, in such a case, is an equitable lien upon the purchase-money, holding the legal title as security for the enforcement of the lien.

The possession of the grantor is that of a purchaser, which could be only terminated either by legal proceedings to enforce the lien, or by sale to an innocent purchaser; and such possession, if maintained, would be sufficient notice to put a subsequent purchaser upon inquiry.

Where the plaintiff and defendant both derive title to land from the same person, the plaintiff is estopped, by his purchase, from denying the title of their common grantor for the purpose of establishing a title in himself by virtue of location of the land under school-land warrants.

And where the plaintiff only proved conveyances from the common grantor, the objection that he established no title in the grantor is cured, if the defendant sets up in defence his own conveyance from the same person, he being then estopped from denying such title.

In ejectment, one, or many defendants may be sued, and they may answer separately, or demand separate verdicts; if they do not, they will be concluded by a general verdict.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

The plaintiff, Robert B. Ellis, brought a suit of ejectment against the defendants, Thomas Jeans, Willis Long, and W. B. Long, to recover a tract of land in Solano county.

The plaintiff put in evidence a conveyance of the land, dated August 21, 1850, from Manuel Vaca to William McDaniel; a subsequent conveyance of an undivided one-half thereof by McDaniel to L. B. Mizner; and a subsequent conveyance from McDaniel and Mizner to one Basye; and another from Basye to plaintiff; also a deed dated in 1852, from one Pena to McDaniel and Mizner. To the introduction of all these deeds, defendants objected, and they were admitted under their exception. Plaintiff also put in evidence a school-land warrant, and the location of a portion of the land in question by plaintiff under it, defendants excepting thereto. A motion for a nonsuit was made, and overruled, and the testimony subsequently offered on both sides is, in substance, as follows:

Manuel Baca, otherwise Vaca, executed an instrument in writing, the material portion of which is as follows:

"Know all men by these presents, that I, Manuel Baca, have,

this twentieth day of March, one thousand eight hundred and forty-seven, sold unto John Patton, Senr., John Patton, Jr., and Albert Lyon, the following land, (describing it.) For the payment of said land, the said John Patton, Senr., John Patton, Jr., and Albert Lyon, have paid the said Baca the sum of two hundred and fifty dollars, the receipt whereof is hereby acknowledged, and further agree to pay the said Baca the sum of five hundred and fifty dollars, in labor, as specified in the article of agreement between John Patton, Senr., John Patton, Jr., and Albert Lyon, and the said Baca, bearing even date herewith. Now, as soon as the said labor is performed, the said Baca binds himself, his heirs, executors, administrators and assigns, to make a general warranty-deed to said land, free and clear from all persons claiming through or under him."

The article of agreement mentioned is not before the Court. The Pattons and Lyon went upon the land in 1847, built an adobe house, kept stock upon the premises, and fenced and cultivated a small portion of the tract, which tract was one-half of a Spanish league, and lies in Solano county. They remained on the premises about a year, and then removed to a place now in Sonoma county. The house remained unoccupied until the spring of 1851, when the Pattons and Lyon conveyed the same land to James H. Long and brothers, two of whom are defendants in this action. The Longs took possession of the house and have remained on the premises ever since.

There was no evidence of any title in Pena. On the introduction, by plaintiff, of the deed from Vaca to McDaniel, the defendant objected, on the ground that it did not correspond with the complaint, which alleged a conveyance from Vaca to McDaniel and Mizner. On motion of plaintiff, he was allowed to amend his complaint so as to conform to his proof in that particular, and the deed was admitted in evidence, under defendants' exception.

The fourth instruction given by the Court below, at request of plaintiff, was as follows: "If the jury shall believe, etc., that Pena and Vaca owned the land, and that Vaca agreed to sell it to Patton, such agreement can affect only an undivided interest in said land, and the jury must find for plaintiffs to the extent of Pena's undivided interest."

The fifth instruction asked by defendants, and refused by the Court below, was: "That plaintiff cannot recover against all the defendants, if the jury believe that the defendants hold the land in severalty and not jointly."

The Court below charged the jury that the instrument from Vaca to the Pattons was an executory contract, adding these words, " and if Patton and Lyon took possession of the land described in said instrument, a *quasi* tenancy from year to year

existed, that could be terminated only by the act of Vaca or of Patton and Lyon; and the possession of the latter was the possession of the former. The deed from Patton and Lyon to the Longs amounts to an assignment of their rights as lessees."

On the subject of the deed from Pena to McDaniel, the Court charged in effect, that if the grantee claimed the land, and exercised any acts of ownership, that the actual possession of his grantee, taking a conveyance, in good faith, of any portion of the tract, is deemed, by construction, the possession of the whole."

The jury found a verdict for plaintiff, and judgment was entered accordingly. Motion for a new trial made and overruled, and defendants appealed.

*John Currey* for Appellants.

The instrument in writing, executed by Manuel Baca to John Patton, Sr., John Patton, Jr., and Albert Lyon, bearing date March 20, 1847, containing therein a description of the land in controversy, should have been admitted in evidence as a deed of conveyance.

As to the charge of the Court in respect to such instrument, see:

1. 4 Kent's Comm., 495; Jackson *v.* Fish, 10 John., 455, and 456; Jackson *v.* Kisselbrack, 10 John., 336; Baxter *v.* Brown, 2 Wm. Black R., 973; Jackson *v.* Van Hoesen, 4 Cow. R., 325, etc.; Butler *v.* Gardner, 8 John., 394.

2. It is a rule that the deed will be expounded, so as to give effect to the intention of the parties. Jackson *v.* Burch, 1 Johns. Cases, 399; Jackson *v.* Ludlow, 3 John. R., 388.

The effect of a deed deducible from its terms, or from matter subsequent, is a matter of fact for a jury to decide. Frier *v.* Jackson, ex dem. Van Alen, 8 John., 495.

A purchase in good faith, to give the grantee thereby a paramount title over a prior grantee, must needs be a subsequent purchase in good faith, for a valuable consideration, of the same real estate; and such subsequent grantee's conveyance must be first duly recorded. Compiled Laws, p. 517, § 26; 1 Am. Lead. Cases, with notes, by Hare & Wallace, p. 83.

The Recording Act, passed in 1850, does not affect, by subsequent conveyances to a purchaser in good faith, for a valuable consideration, and first duly recorded, a conveyance before then made. Compiled Laws, p. 517, § 26.

The possession of land by the vendee, under a conveyance, is such evidence of title as amounts to constructive notice to creditors or subsequent purchasers. Hawley *v.* Cramer, 4 Cow. R., 722, etc.; Jackson *v.* Cadwell, 1 Cow. R., 623 and 641; Walker *v.* Gilbert, 1 Freeman's Ch. R., 85; Harper *v.* Reno, 1 Freeman's

Ch. R., 323; Norton v. Robards, 4 Dana R., 258; Brush v. Ware, 15 Peters' R., 112; Jenkins v. Eldredge, 3 Story's R., 182.

The instruction requested by defendants' counsel in these words, "that plaintiff cannot recover against all the defendants if the jury believe the defendants hold land in severalty, and not jointly," ought to have been given by the Court. Fosgate v. Herkimer Man. and Hydraulic Company, 9 Barbour R., 295; Pearce v. Colden, 8 Barb. R., 522, etc.; Jackson v. Hazen et al., 2 John. R., 438; Jackson v. Scoville, 5 Wend. R., 96; Practice Act, § 64.

The charge of the Court was erroneous:

1. Because some, the slightest acts, on the part of a grantor in respect to the land which he undertakes to convey, may not be sufficient to establish the presumption that he is the owner, and the grantee could derive no greater title or right than his grantor had before conveyance; and,

2. Because the deed of conveyance, coupled with possession of the land therein described, in part, cannot, *ipso facto*, extend by construction the actual possession beyond that which the grantor owned, and could and did convey.

The assertion of a claim to land is no evidence of title in the claimant.

The grantor's possession, to amount to evidence of title, must be a *pedis possessio*, or that which is equivalent thereto. "Some acts of ownership, or respecting it," is too indefinite to become a rule in such cases.

*Ralston & Wallace* for Respondent.

The respondent first insists that school-land warrants were properly received in evidence. On this subject, respondent refers to Compiled Laws, p. 869, §§ 5 and 6; Warren Nims v. Palmer et al., decided January Term, 1856.

It is, however, insisted that respondent, by introducing testimony showing a grant of the same land by Vaca to McDaniel, thereby defeats the operation of the school-land warrants. The respondent introduced no evidence of title in Vaca. It is shown that Basye, by purchase from McDaniel, who purchased from Vaca, was placed by McDaniel in possession.

These facts, it is insisted, do not authorize the respondent to float the school-land warrants elsewhere, under the seventh section of the act last referred to.

The remaining question respondent shall soon dispose of—as to the admissibility of the instrument in writing from Vaca to Patton and others.

The defendants insist that it is a deed of conveyance of land, and should have been read as such. Respondent says that it is only a contract to sell. It refers to "an article of agreement,"

which was not complied with, neither was it produced.   Patton and associates took possession.

If an instrument is of a doubtful construction, it is proper to see how it was understood by the parties thereto, at the time of its execution.

The Mexican law prevailed here when the deed was made.   It was not authenticated before a notary, as that law required, and was not received by the parties to it as a deed to the land; but it was received as an instrument in writing.

Prior possession of land will authorize recovery in ejectment. 15 Penn. R., 487; Winans v. Christy, 4 Cal. R., 79; Plume v. Seward et al., 4 Cal. R., 95; Hutchinson v. Perly, 4 Cal. R., 33. The Court cannot therefore give it, now, the higher qualities of a deed of conveyance. ·

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, J., concurring.

It is insisted by defendants that the instrument, coupled with possession under it, constitutes a present conveyance, with a covenant for further assurance; while the plaintiff maintains that it is no more than an agreement to convey when the labor mentioned should be performed.

The defendants' counsel has referred to several authorities in support of his construction, the most important of which is that of Jackson v. Kisselbrack, (10 Johns., 335.)   The material portions of the lease were as follows: "Memorandum of an agreement, made the fifteenth day of January, 1798, between Henry Livingston and Yury Kisselbrack, witnesseth: that the said Henry Livingston hath let, and to farm let, unto the said Yury Kisselbrack, all that farm, etc., situate, etc., in the manor of Livingston, etc., for the rent of twenty bushels of good winter wheat yearly, and every year, for and during the term of the natural life of him, the said Yury, and Elsie, his wife; the place to be surveyed on or before the first day of June next ensuing this date, and then the said Yury is to take a lease for the same. It is further understood by the parties to these presents, that the first rent is to be paid on the first day of January, 1799, and the farm to contain eighty acres of land."

The defendant, Kisselbrack, entered into the land, and had occupied it fourteen years, and gave in evidence a receipt dated in 1810, for forty bushels of wheat for rent.   Under these circumstances, the Court held that the instrument was a present lease.   It is to be observed, however, that there is a clear distinction between leases and deeds for the conveyance of land. In leases, the tenant generally takes possession, and the lease takes effect before the rent is paid, and this circumstance is a very strong one to show the intention of the parties.   But in the sale of land on time, the usual practice is, either to execute

27

a note for the payment of the purchase-money, and take a bond for a title when the payment shall be made, or to take a deed and execute a note and mortgage to secure the payment.

In this case, Baca executed and delivered to the Pattons and Lyon, an instrument binding himself to make a deed, upon the performance of the condition mentioned, and they, on their part, executed and delivered to him an article of agreement to perform the labor, which constituted the other portion of the price of the land. The sum of two hundred and fifty dollars was paid in hand, and the sum of five hundred and fifty dollars was thereafter to be paid. It would seem hardly probable that Baca intended this as a present conveyance, when nearly three-fourths of the purchase-money remained unpaid. Although the word *sold* is positive and in the present tense, yet it must be construed with reference to the whole instrument; and when we look into it, the intention of the parties would seem to have been to execute and deliver to each other mutual executory in-struments, so that each might have in his own possession the evidence to enable him to enforce the contract against the other. This view is also supported by the consideration that Baca was only bound, upon the performance of the labor, to ex-ecute a warranty deed of a certain character, " free and clear from all persons claiming under him." If the instrument be construed as a present conveyance, then the difference between it and the deed thereafter to be made, is too little to afford any protection or security to Baca. Besides this consideration, the parties call the paper " this instrument of writing," while they call the conveyance to be thereafter made, a " deed." Another consideration is the fact that there are no express words defin-ing the kind of estate intended to be conveyed, whether for years, for life, or in fee simple. This would hardly have been the case, had the parties considered it a present conveyance.

The case of Jackson *v.* Myers, 3 John. R., 390, would seem to be a case in point. " Balters, for the consideration thereinafter mentioned, *granted, bargained, sold, and conveyed,* the premises to George Ludlow, to hold in trust for William and Gabriel Lud-low, their heirs and *assigns forever ;* and Balters covenanted to make a good and sufficient deed, by the first day of May follow-ing, in consideration whereof George Ludlow covenanted that he and William Ludlow, or one of them, would assign bonds given by certain persons, (and including the bond of Balters to William Ludlow,) to the amount of seventeen hundred pounds, and the parties mutually agreed to secure the said land and bonds, *to be severally conveyed* and *assigned,* against all confisca-tions," etc. The Court decided that this was an executory con-tract only, and, in the opinion, say : " The cases sufficiently es-tablish the rule of construction, that though a deed may in one part use the formal and apt words of conveyance, yet if, from

other parts of the instrument, taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail."

If this construction of the instrument be correct, the next inquiry regards its effect upon the rights of the parties. In the case of Gauldin *v.* Buckelew, 4 Cal. R., 107, it was held by this Court that the vendor's relation to the land, after an executory sale, "according to sound principles of equity, sustained by a long current of decisions," was "an equitable lien upon the land, for the purchase-money, and holding the legal title as a security for the enforcement of his lien."

The vendor has several remedies: First, he might recover possession, and hold the property, until the rents and profits paid the purchase-money, and then equity would compel him to convey to the purchaser; Second, he might enforce his lien in a Court of Equity, and sell the land, and the surplus proceeds, if any, would be the property of the purchaser. In reference to another feature of that case, Mr. Justice Heydenfeldt, in delivering the opinion of the Court, says: "The argument, that the length of time which elapsed without payment of the purchase-money, demands the inference that the contract had been abandoned, is of no force. It was within the power of the vendor to have rendered the time as short as he chose, by a prompt enforcement of his lien."

From the construction we have given this instrument, and the relation Baca sustained to the land, it would seem to follow that while he held the legal title in himself, he only held it *as security*, and that he had no right to consider the contract at an end, because of the delay, (conceding that there was such delay,) and proceed to sell the property to others, without any offer to return the money paid, and rescind the contract; and that if he did sell the land, the purchaser with notice would take it subject to the executory contract, either in the hands of the Pattons and Lyon, or of the Longs, and the parties to whom they conveyed.

On the twenty-first day of August, 1850, Baca conveyed the land in controversy to William McDaniel, after the Pattons and Lyon had left the premises, and before the purchase by the Longs. Had the Pattons, and Lyon, or the Longs, or any other person claiming under the executory agreement, been in the actual occupancy of the premises at the date of McDaniel's purchase, I should hold that such possession would have been sufficient notice of itself. But as no one was then in possession, and as Baca had claimed the property, and had the *prima facie* title, there was nothing sufficient to put McDaniel upon inquiry. If this position be correct, it would be necessary to prove actual notice on the part of McDaniel to defeat his purchase. This might be done by circumstantial evidence, if the circumstances

established would satisfy the jury that he did in fact know of Pattons' and Lyon's claim.

The defendants' counsel made various points and exceptions in the Court below, in answer to which the counsel for plaintiff insist that the record does not state that the evidence therein contained was all the evidence given in the case. But we think this ground is not correct, as the agreement of the counsel for both parties, that "the foregoing is a correct statement of the case in the above action, to be used on motion for new trial, and on appeal, if appeal be taken by either party," is sufficient when taken in connection with the fact that the statement purports to give the testimony of all the witnesses, whose names are mentioned in another part of the record, as the witnesses examined both for plaintiff and defendants.

The defendants' counsel objected to the introduction of the deed from Baca to McDaniel, and the several mesne conveyances from him to plaintiff upon certain grounds specified. The objection to the admission of the deed from Mizner and McDaniel to Basye was no doubt well taken for the reason that the seal of the Court was not attached to the certificate of acknowledgment, though otherwise in due form. But this objection was afterwards cured by the testimony of McDaniel, by whom the execution of the deed was proved, without objection. The objection made to the introduction of the other deeds was proved without objection. The objection made to the introduction of the other deeds, upon the ground that they did not prove title in Baca, and therefore not in plaintiff, conceding that it was well taken at the time, was afterwards cured by the introduction of the executory agreement, in connection with other testimony on the part of defendants. For it seems to be well settled, that when a party enters into the possession of land, claiming under another and in subordination to his title, he is estopped from questioning it. 1 Cal. Rep.. 120, 470. The defendants, Longs, claimed under Baca, and they thereby admitted title in him at the time of the execution of the executory contract, and as they did not attempt to show that Baca had conveyed to any other person before the deed to McDaniel, they were precluded from questioning McDaniel's title, and also the derivative title from him, except upon the ground that the purchasers took with notice, or had not paid value, or had failed to record their conveyances. The objection that copies of the deeds were received in evidence, without accounting for the absence of the originals, was not made in the Court below, and cannot be made here. The objection to the admission of the deed from Pena to McDaniel, and the instruction in reference to it, seems to have been well taken, as no sufficient predicate had been laid for its admission, and if there had been, the instruction is too broad. See my opinion in the case of Bird v. Dennison, delivered at this term of the Court.

It will be necessary, in the next place, to examine the title of the plaintiff, arising under the location of the land warrants upon a portion of the premises in dispute. The right to locate these warrants upon public lands, within this State, has been settled by this Court in the case of Nims v. Palmer et al., decided at the January Term, 1856. The only question that can arise upon this branch of the case, is founded upon the fact that plaintiff, in March, 1852, purchased a portion of the land, *upon* which the school warrants were located, from Basye, who claimed by deed from McDaniel, the warrants having been located in 1853. The fact that the plaintiff had purchased from Basye, and he from McDaniel, would estop the plaintiff, as between him and the Longs, from disputing the title of Baca to the land described in the deed to McDaniel, as the plaintiff was bound to know the contents of all the mesne conveyances through which he claimed. The plaintiff could not, then, rely upon any title under land warrants, so far as they were located upon the land described in the deed to McDaniel. Conceding that these warrants were located partly upon the McDaniel tract, and partly upon other land, then they would be good as to the latter portion, if otherwise unobjectionable. The fact that they were located partly upon land admitted to be private land, would not vitiate the other portion of the location, as no one would be injured in such a case but the locator himself, while the State would be the gainer, and could not object.

The other objections to the admissibility of testimony, we think were not well taken.

The first instruction given for the plaintiff may have been proper, under the circumstances of the particular case. The fourth instruction is erroneous, as there was no evidence that Pena had any title, or that defendants had ever admitted any title in him, to any portion of the premises in dispute.

The first instruction offered by defendants, which is in these words: " That the possession of land by the vendee, under a conveyance, is such evidence of title as amounts to constructive notice to creditors, or subsequent purchasers," we think was properly refused, as being too broad in its terms. Had it been confined to possession under an executory contract for the purchase of land, in my opinion it would have been proper. The second, third, and fourth instructions, given by the Court, at the request of defendants, were as strong as they could properly ask, and, as they were not objected to by the plaintiff, it is not necessary to express any opinion in relation to them. The fifth instruction offered by defendant, we think was properly refused. In the case of Winans et al. v. Christy et al., 4 Cal. R., 70, it was held, that in ejectment, one or more defendants may be sued, and they may answer separately, or demand separate verdicts, and if they do not do so, they will be concluded by the general verdict. The

instruction given by the Court, on this point, was more than the defendants had a right to ask. All they had a right to ask, was that a separate verdict should be found as to defendant Jeans, and another as to defendants, the Longs.

The first portion of the charge given by the Court, and excepted to by defendants, which construes the instrument from Baca to Pattons and Lyon, as an executory contract, I think correct; but the latter portion, I must consider as erroneous. I consider the possession of the Pattons and Lyon, and of the grantors, as the possession of purchasers, which could only be terminated either by legal proceedings on the part of Baca to enforce his lien, or by a sale to an innocent purchaser..

For the reasons given, I think the judgment of the Court below should be reversed, and the cause remanded for further proceedings.