## POWELL et al. v. HUNTER, Appellant.

### Division One, May 29, 1907.

1. **DEED OR CONTRACT: Intention.** The written instrument signed by Thomas C. Powell and wife recited "that for and in consideration of the sum of five dollars per acre to me in hand paid and to be paid by James W. Cannady, I have this day granted, bargained, sold, and conveyed with deed in fee with general warranty unto said Cannady, his heirs and assigns forever," 2,260 acres of land. "To have and to hold the said lands upon the express condition the said Cannady is to pay five hundred dollars within ten days and then pay the remainder in annual installments equal with eight per cent interest from date. A lien is hereby retained on said land [until] fully paid [for], and whenever the said five hundred dollars is fully paid the wife of the said Thos. C. Powell is to join him in the conveyance of the said land." *Held*, not to be a deed, but a contract of sale, reserving a vendor's lien. The language used indicates that Powell had simultaneously with this instrument made a deed, to be executed by his wife when the five hundred dollars was paid.

2. ————: **Vendor's Lien: Tender of Deed.** The instrument sued on being a contract of sale, reserving a vendor's lien, a bill of equity which asks for judgment for the unpaid purchase price and to enforce the lien, wholly fails to state a cause of action unless it avers a willingness on plaintiff's part to perform the contract by making a sufficient deed. And the evidence is also insufficient if it fails to show the execution and tender of the deed.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Faris & Oliver* for appellant.

(1)    This is an action to enforce a vendor's lien, which has always been held to be an action in equity. Dickerson v. Fisher, 137 Mo. 342; Talbot v. Roe, 171 Mo. 421.    And this is true even if the action be regarded, as it is, in a sense a suit for specific performance. Taylor v. Williams, 45 Mo. 80; Sease v. Cleveland and Coy, 141 Mo. 488.    The principles which govern a suit for specific performance are the same as those which govern a suit to enforce a vendor's lien.    Paris v. Haley, 61 Mo. 453.    The petition nowhere prays judgment against appellant Wm. Hunter.    The sole prayer is for judgment against Cannady alone.    Judgment against Hunter cannot be sustained.    Rush v. Brown, 101 Mo. 586; Mellor v. Railroad, 105 Mo. 455.    Powell agreed to warrant title and his assigns could not recover till he did so, and conveyed an indefeasible title.    Fry on Spe. Perf., sec. 573; 3 Parsons on Contracts, 380; Sedgewick v. Hargrave, 2 Ves. 59; Jeffries v. Jeffries, 117 Mass. 184; Hymers v. Branch, 6 Mo. App. 515; Richmond v. Gray, 3 Allen 25; Seaman v. Vawdry, 16 Ves. 390; Bensel v. Gray, 80 N. Y. 517.    (2)    The petition is fatally defective in that it does not allege that the title attempted to be conveyed by T. C. Powell is good, or offer to make a good title.    Luckett v. Williamson, 31 Mo. 54; Wellman v. Dismukes, 42 Mo. 101.    The assignees of T. C. Powell cannot recover from Hunter the purchase price of land to which their assignor never had any title, and to which they do not contend or insist that he had title, at the time he made the contract or subsequent thereto.    The law might do this, but equity will not.    Corby v. Bean, 44 Mo. 379; Cravens

v. Moore, 61 Mo. 178; Cline v. Vogel, 90 Mo. 239; Steckman v. Harver, 55 Mo. App. 71; Woodard v. Mastin, 106 Mo. 324; Springfield Gro. Co. v. Walton, 95 Mo. App. 526.

*J. R. Brewer* for respondents.

(1) That the instrument made by T. C. Powell, Sr., and his wife, Annie, to Cannady is a deed is so evident and plain that it needs no authority to support the proposition. If this instrument is a deed, it conveyed the property, and therefore neither appellant nor Cannady had any equity. Respondents can conceive of no reason why appellant contends that the instrument made by T. C. Powell and his wife to Cannady is not a conveyance but a contract to convey, unless because of the provision in said instrument that whenever five hundred dollars is fully paid, the wife of said T. C. Powell, Sr., was to join him in said conveyance. An examination of the acknowledgment to said deed shows that T. C. Powell, Sr., acknowledged said deed on the 6th day of May, 1896, and his wife acknowledged it on the 24th day of June, 1896. This five hundred dollars must have been paid between these two dates, and after said payment said wife joined in said deed in compliance with the condition of said wife's joining in said deed. (2) Cannady took possession under the deed made by T. C. Powell, Sr., and his wife, on May 6, 1896, and he is estopped to deny said T. C. Powell's title. That he did take possession under the deed is evident for he, after he went into possession of said land, stated to the said T. C. Powell, Sr., the grantor in said deed, in the presence of the witness Jim Martin, "that when he (T. C. Powell, Sr.,) got him (J. W. Cannady) up a good title to his land that he (Cannady) was ready to pay him (said Powell)." A vendee of land in possession cannot defeat the action for the purchase money on the ground that his vendor had no title to convey. Is-

ler v. Egger, 17 Mo. 332; Pershing v. Canfield, 70 Mo. 140; Smith v. Busby, 15 Mo. 387; Cartwright v. Culver, 74 Mo. 179.

GRAVES, J.—Plaintiffs claim to be the assignees of a written instrument, in words and figures, as follows:

"Caruthersville, Mo., May 6, 1896.

"Know all men by these presents, that I, Thomas C. Powell, of the county of Lake and the State of Tennessee, that for and in consideration of the sum of five dollars per acre to me in hand paid and to be paid by James W. Cannady, of New Madrid, Mo., I have this day granted, bargained, sold, and conveyed with deed in fee with general warranty unto the said James W. Cannady and unto him, his heirs and assigns forever, the following described tract or parcels of land lying and being in Pemiscot county, Missouri, to-wit: The west half of section 13, all of section 14, except the north half of the northeast quarter, and the north half of section 23, and the east half of the southeast quarter of section 12, and the northwest quarter of section 12, and the north half of the northeast quarter of section 12, and the east half of the southwest quarter of section 12, all of section 15, all of the above lands in township 17, range 12.

"To Have and Hold the said lands upon the express condition the said Cannady is to pay five hundred dollars within ten days and then pay the remainder in annual installments equal with eight per cent interest from date, and is to pay one dollar per thousand for each one hundred thousand feet of timber shipped and said one dollar to be applied as payment of purchase money on said land. A lien is hereby retained on said land is fully paid, and whenever the said five hundred dollars is fully paid the wife of the said Thos. C. Powell, is to join him in the conveyance of said land,

"Witness our hands and seals, this day and date as first above written.

> "T. C. POWELL,
> ANNIE POWELL,
> By daughter, ADDIE CAMPBELL,
> JAMES W. CANNADY.

"Witness: JOE F. ASHLEY."

This instrument was acknowledged by T. C. Powell, May 6, 1896, and by Annie Powell, June 24, 1896. Both acknowledgments were before a notary public in Pemiscot county, Missouri.

Plaintiff L. B. Powell had and introduced in evidence an assignment of said instrument in these words:

"For value received I hereby assign, sell and convey to L. B. Powell the debt owing me by J. W. Cannady as evidence by a certain deed made by me and date May the 6th, 1896, and recorded in Book 10, at page 313, of the deed records of Pemiscot county, Missouri, also hereby conveying to the said L. B. Powell all my rights to the vendor's lien in said deed mentioned. This 13th day of February, 1902.

> "T. C. POWELL,
> ANNIE POWELL."

This was duly acknowledged in Lake county, Tennessee. L. B. Powell then made a similar assignment to plaintiffs J. J. Williams and J. R. Brewer of a forty eighty-thirds interest in said contract or written instrument. The first-mentioned instrument was filed for record in Pemiscot county, Missouri, June 25, 1896.

The petition, after alleging the execution, delivery and record of the first-named instrument, alleges the execution of the other two, in the nature of assignments, then alleges that Cannady immediately took possession of the lands, and later, August 16, 1901, said Cannady, by warranty deed, conveyed the west half of section 13, township 17 north, of range 12 east, to de-

fendant, William Hunter; that Hunter had knowledge of said vendor's lien; that there remains due and unpaid on said debt the sum of ten thousand dollars with accrued interest thereon, at the rate of eight per cent per annum; that Cannady had cut off of said land fifteen million feet of lumber. The petition also admits payments by Cannady of one hundred dollars and five hundred dollars.

The prayer of the petition is in this language: "Wherefore, plaintiffs pray judgment against the defendant J. W. Cannady, for said sum of ten thousand dollars with interest from the 6th day of May, 1896, at the rate of eight per cent per annum, and that the aforesaid land, or enough thereof, be sold to satisfy said judgment. And for such other and further relief as to the court may seem meet and proper in the premises."

Defendant, Hunter, answered by general denial and further specially pleaded that he was the owner in fee thereof; that he purchased the fee title from the heirs of A. B. S. West; that in the purchase from J. W. Cannady, he was purchasing his peace and took and paid for a deed from Cannady by way of compromise and to avoid litigation.

We find also an answer, by leave of court, from William and Mary Cannady. The record does not disclose but they were probably heirs of J. W. Cannady, deceased. Their answer admits the contract and payments and denies all other matters. They further answer by saying that T. C. Powell had no title to the lands mentioned in the contract, and that the payments were made upon the faith that Powell would execute to J. W. Cannady a warranty deed, which he did not do. By amendment to their answer, permitted by the court, they allege their willingness to pay for the lands if plaintiff will make them a good and sufficient warranty deed.

Judgment was for plaintiffs against J. W. Bader, administrator of J. W. Cannady, for $16,275.50, declaring the same a lien upon all the lands mentioned in the contract, which included the land claimed by defendant Hunter, to-wit: The west half of section 13, in township 17 north, range 12 east.

Motions for new trial and in arrest of judgment being overruled, the defendant Hunter appealed and perfected his appeal in this court.

There are several conflicts in the testimony upon one or more propositions, but fairly summarized, the case made by the evidence is substantially thus:

Plaintiffs introduced the three several written instruments above described.

It was shown by T. C. Powell, Jr., and J. H. Powell, that T. C. Powell had assigned the original contract to them in the year 1901, about one year prior to the assignment to L. B. Powell. This they say was done by a writing on the back thereof. One of them admits, however, that it was for collection and that they were to get twenty per cent of what they collected. Both say that they paid nothing for the assignment. Plaintiffs put on these two witnesses, evidently for the purpose of proving the handwriting of the father, but such was their evidence in addition to their identification of their father's signature. With these written instruments, this evidence from the two Powells, and the evidence of one Martin to the effect that Cannady took possession of the land in dispute shortly after the date of contract, the plaintiffs closed their case in chief.

Singular to say, the original duplicate copy of the contract upon which it was claimed was written the first assignment was not produced, although it was traced to the hands of L. B. Powell. Nor did L. B. Powell testify in the case.

Defendant Hunter, testifying in his own behalf,

says that he bought the land in dispute from the West heirs. That he claimed title to some land in section one as well as this in section 13; that he found that Cannady had some claim of title to the land in section one, but none to that in section 13, except this contract, and Powell had no title at all to this and could convey none to Cannady. He further says that to avoid trouble he made a trade with Cannady by which he got a deed to the land in both section 1 and in section 13. He admits that Martin, a tenant for Cannady, was in possession and that he afterwards leased part of the land to Martin.

Defendants further offered Carleton's Abstracts of Title in Pemiscot county, Missouri, by which it appears that the title passed regularly from Pemiscot county, the admitted common source of title, through *mesne* conveyances, to one A. A. B. S. West, the last deed in said chain being one from Thomas B. Cooper to said A. A. B. S. West, of date March 9, 1868, and recorded January 25, 1869. At this point trouble begins. Defendants then offer power of attorney from T. P. West, John A. West et al. to J. L. Mosier and T. M. Pierce, dated March 1, 1901, and then a quitclaim deed from Mosier and Pierce and one George S. Hardy, of date June 18, 1901, and another quitclaim deed of date January 9, 1901, from said Mosier, Pierce and George S. and C. P. Hardy to Hunter. Plaintiffs objected to these last three instruments, and among other reasons assigned that the grantors in the power of attorney did not appear to be the heirs of A. A. B. S. West, but of one A. B. S. West. These objections evidently grew out of a deposition of one T. P. West, which defendants introduced. T. P. West undertook to give the heirs of A. A. B. S. West, but when cross-examined said that the name was A. B. S. West. That he was a brother and never heard of there being two A's in the name. That his brother A. B. S. West died

at Jackson, Mississippi, about 1863, as he thought. That the initials A. B. S. stood for Andrew Bennett Spruill. He did not know of his brother having lands in Pemiscot county until informed by Mosier, who was to give him $50 for his interest and the power of attorney. He said that he told Mosier that his brother's name was A. B. S. West, but admitted that he had signed an affidavit of heirship which was shown at the taking of the deposition. About this affidavit, his language is thus: "I never made no distinction, I told him it was A. B. S. West; I never heard of the other 'A' being used at home; I thought the mistake got in there by some typewriter getting in two 'A's' instead of one."

Defendants also offered the deposition of J. I. Sellers for a like purpose, but the witness had refused to sign it and it was excluded.

The Wests lived in Tennessee, and apparently were ignorant persons.

The evidence for defendants further tends to show a prior assignment upon the written instrument to T. C. Powell, Jr. and J. H. Powell. J. H. Powell being recalled, stated that he was mistaken in saying that he had the original instrument, but that it had been left with C. E. Bragg, an attorney, and Mr. Bragg testified that T. C. Powell, Sr., left it with him and that after his death it was delivered to L. B. Powell. This witness says that there was an assignment upon it to T. C. Powell, Jr., and J. H. Powell; that at the time of the delivery neither T. C. Powell, Jr., nor J. H. Powell was present. Bragg was offered as witness by plaintiffs. For the defendants, Sam. J. Corbett, an attorney, testified that he had seen the original instrument, and that there was an assignment to T. C. Powell, Jr., and J. H. Powell upon it.

There was also evidence of an admission upon the

part of Cannady that he had made payments of money on these lands, including taxes to the amount of fifteen hundred dollars.   This states the evidence.

The court instructed the jury as follows:

"The court instructs the jury that you should find for the plaintiffs and in determining the amount which you should find you should multiply the five dollars per acre by the number of acres described in the deed read in evidence, and deduct from that amount the sum of six hundred dollars paid by J. W. Cannady, and on the remainder calculate interest at the rate of eight per cent per annum from the 6th day of May, 1896, to the present time."

"The court instructs the jury that the question presented for your determination is whether under the contract between T. C. Powell and Annie Powell, his wife, and J. W. Cannady, entered into in the year 1896, there was or was not at the time of the filing of this suit on the 23rd day of April, 1902, any money due on said contract by one J. W. Cannady, and if any was due, then, the amount due now."

And refused the defendant's instructions, as follows:

"The court instructs the jury that under the evidence in this case your finding should be for the defendants."

"The court advises you the instrument shown in evidence bound the said J. W. Cannady to pay the sum of five hundred dollars only, annually; that plaintiffs cannot recover except for the time which has elapsed since April 4, 1896, up to the time of filing this suit on the 26th day of April, 1902, or for six years.   That unless you believe that said annual payments have not been paid you will find for the defendants.

"The court instructs the jury that the party alleging the fact must prove it; and if you find from the pleadings in evidence in this case that the plaintiffs

have alleged non-payment, and have failed to establish that fact by the evidence, your verdict should be for the defendants. And in this connection you are instructed that the law presumes payment unless non-payment is established by evidence.''

The verdict and judgment was as hereinbefore set out.

This is an extremely harsh and peculiar case. T. C. Powell without a shade or shadow of title undertook by the written instrument first hereinabove set out to sell to J. W. Cannady, 2,260 acres of wild lands, at the time in the possession of no one. Cannady took possession, cut a quantity of timber, built two or three tenement houses for his laborers, working at his sawmill, and afterwards by warranty deed conveyed three hundred and twenty acres thereof, together with other lands, to Hunter. Powell dies after having made the two assignments of his alleged vendor's lien, as hereinafter mentioned. Suit is instituted against Cannady and Hunter. Before trial Cannady dies, and his heirs and administrator are made parties.

In our judgment, the result of this case turns in the first place upon the character of the written instrument, of date May 6, 1896. What is the character of this instrument? Is it a mere contract to sell and convey, or is it a deed within itself? From its face can we determine what is the intention of these two deceased individuals? All these are questions presented, and we have in the record but little light save and except the instrument and the conduct of the parties. Plaintiffs, in the first part of their petition, call it a contract, but later denominate it a deed. The defendants look upon it as a contract, and the trial court so names it in the judgment.

If it is a contract, plaintiffs' petition is fatally defective and the proof necessary for recovery woefully wanting. If it is a deed another view must be taken.

We think this instrument is a contract to sell and convey lands, and not the conveyance itself. The wording is peculiar, intricate and complicated, but from it all we think we can gather an intent upon the part of the parties to deliver a fully executed warranty deed, signed by the grantor and wife at a future time. In this instrument we find these words: "I have this day granted, bargained, sold and conveyed with deed in fee with general warranty unto the said James W. Cannady and unto him, his heirs and assigns forever, the following tract," etc. At the end of the instrument we have these words: "And whenever the first five hundred dollars is fully paid the wife of the said Thomas C. Powell is to join him in *the* conveyance of the said land." The first clause quoted would indicate that Powell had on that day executed a general warranty deed to the land, but the latter clause would indicate that the wife was not to sign the deed until the five hundred dollars was paid. If the instrument before us was intended for the conveyance, then instead of saying the wife "is to join him in *the* conveyance of said land" the parties would have said, "is to join him in *this* conveyance of said land." The use of the word "the" clearly indicates that there was another instrument of conveyance in the minds of the parties; that they did not consider the instrument in suit the "deed in fee with general warranty." It would rather indicate that the grantor himself had executed, simultaneously with the instrument in suit, a general warranty, in which separate instrument he was to be joined by his wife when the five hundred dollars was paid. And further this instrument in the clause first quoted says: "I have this day granted, bargained, sold and conveyed with deed," etc. The past tense of the verbs herein used would clearly indicate another instrument, a general warranty deed, which was to be later signed by the wife. If this instrument sued upon

was the deed, the parties would not have said therein that "I have . . . granted . . . with deed," etc. If the instrument was understood to be the conveyance itself, why say that, "I have . . . conveyed . . . with deed," etc., instead of saying that, "I do by this instrument grant, bargain, sell and convey," etc.?

Again, this instrument speaks of a "deed in fee with general warranty." There is no such clause in the instrument before us, and this is evidence that the parties had in view another writing as the instrument of conveyance. Even though it be said that, under Revised Statutes 1899, section 907, the use of the words, "grant, bargain and sell," amounted to a covenant of warranty, these words are not found in this contract of sale. The words here used indicate that at some prior time and by some prior instrument the statutory words had been used. We think the trial court was right in its judgment, when the instrument was therein called a contract rather than a deed, and that defendant is right in his contention that it is a contract of sale, reserving a vendor's lien.

The action to enforce a vendor's lien is equitable in its nature. [Dickason v. Fisher, 137 Mo. 342.] Such liens are in the nature of an equitable mortgage. [Talbot v. Roe, 171 Mo. l. c. 432.]

If the instrument sued upon here is a mere contract of sale, reserving a vendor's lien, as we think it is, then the bill in equity, filed by plaintiffs, is wholly without equity, and states no cause of action, in this, that it fails to aver a willingness upon the part of the plaintiffs to perform Powell's part of the contract by the making of a sufficient deed with covenants of warranty. The evidence is wholly insufficient, in that it fails to show that Powell and wife ever executed and delivered such a deed, or that such a deed had been tendered at any time, either prior to suit or during suit.

And this, too, in the face of the answer of Cannady's heirs, in which they offer to perform their father's contract, upon the performance of Powell's said part of the contract by the delivery of the deed.

Right here, it may be remarked that as indicative of how the parties understood this instrument, we find that Powell, in his lifetime, brought no action, and Cannady, in his lifetime, said that he was ready to pay when Powell could make him a deed.

Powell and the Wests lived in Tennessee and it may be that Powell thought he could acquire the West title, when he contracted to sell, but afterwards failed so to do. This might account for the situation. But to leave out all matters of mere conjecture, we think it well settled that this bill is fatally defective as above indicated. In discussing a similar situation, HENRY, J., in Pershing v. Canfield, 70 Mo. l. c. 143, said: "The judgment rendered against the defendant is for the entire ba'ance of the purchase money, but is silent as to the execution of a deed by the plaintiff. While defendant cannot hold the land and refuse to pay the purchase money, neither can plaintiff recover the purchase money until he shows his willingness to comply with his agreement by tendering defendant a deed to the land. He cannot have the purchase money and retain the title to the land. The nearest approach to a tender of a deed by plaintiff is the allegation in the petition that he has always been, and is still willing to comply with his contract. This is not sufficient. He cannot compel the defendant to a specific execution of the contract until he has executed or offered to execute the agreement on his part. The court will not decree a specific performance against one party to a contract, and leave it executory as to the other."

For the same reason the judgment in the case at bar is defective and wrong. Under no circumstances should the judgment have compelled the payment of

the purchase money under this contract, without compelling the delivery of the deed called for in the contract. It may be that such deed could not be delivered, but if so, that only adds trouble for plaintiffs, for which defendants are in no wise responsible.

In the present shape this bill should be dismissed, but it may be that plaintiffs can so amend as to bring it within the views herein expressed. And should plaintiffs be able to amend, upon retrial defendant Hunter may be able to make more convincing proof of the identity of the West mentioned in the deed and A. B. S. West, whose heirs execute the power of attorney. There may be a mistake in the recording of the West deed. These conclusions obviate a discussion of other questions. The judgment is reversed and cause remanded.

All concur.