[Civ. No. 3222.   Second Appellate District, Division Two.—July 30, 1920.]

## E. S. ROBERTS et al., Respondents, v. F. J. ABBOTT, Appellant.

[1] DEEDS—SIGNATURE BY PERSONS NOT NAMED AS GRANTORS—EFFECT OF.—A deed signed and acknowledged by persons named therein as grantors, and by others as well, is not the deed of those not mentioned in the body of the instrument as grantors.

[2] ID.—NATURE OF INSTRUMENT—CONVEYANCE IN PRAESENTI—INTENTION OF PARTIES—DETERMINATION OF.—To determine whether a written instrument is in itself a conveyance or an agreement to convey, it is necessary to inquire for and ascertain, if possible, from the whole instrument, just what the intention of the parties was; and in determining the intention, the first rule is to ascertain whether the language imports a present conveyance, or whether, collecting all its parts, it contemplates a further assurance to pass the title.

[3] ID.—AGREEMENT TO CONVEY—CONSTRUCTION OF INSTRUMENT.—A
written instrument containing a provision by which the parties of
the second part, after complying with certain prerequisites, "bind
themselves to give a good and sufficient deed," etc., and which is
signed by both parties thereto, constitutes an agreement to con-
vey and not a conveyance *in praesenti*, notwithstanding such in-
strument commences with the recital that, for a specified consid-
eration, the parties of the second part "have this day bargained,
sold and delivered" to the party of the first part the property in
question.

[4] PLEADING—AMENDMENT AFTER TRIAL—ABSENCE OF EVIDENCE TO
SUPPORT.—After trial of an action to quiet title, it is error to
permit the plaintiffs to strike from their complaint an allegation
that certain named individuals "entered into an agreement, whereby
they agreed to sell" certain property rights to one of plaintiffs'
mesne grantors, and insert in the place and stead thereof that said
individuals "bargained and sold and delivered" such property
rights to said mesne grantor, where there is no legal evidence
before the court justifying the same.

APPEAL from a judgment of the Superior Court of San
Bernardino County. J. W. Curtis, Judge. Reversed.

The facts are stated in the opinion of the court.

D. M. McDonald, Benj. F. Warner and McNab & Hodge
for Appellant.

J. P. Chandler and Allison & Dickson for Respondents.

THOMAS, J.—This is an action to quiet title (1) to a
three-fourths interest in a certain mining claim alleged
to be owned by the plaintiff E. S. Roberts, and (2) to all
the "surface rights" of such mining claim, alleged to be
owned by the plaintiff Jeal. The lower court found for the
plaintiffs, and judgment was accordingly entered against
all the defendants. From the judgment defendant F. J.
Abbott alone appeals.

It is conceded at the outset, by all parties to this suit,
that the title is derived either directly or through mesne
conveyances from the plaintiff E. S. Roberts.

We think all the points raised by appellant may properly
be considered under one assignment, i. e., that the evidence
does not support the findings.

The court found, among other things, as follows: "That on or about the twenty-ninth day of April, 1916, the defendant J. M. Rice and the plaintiff E. S. Roberts and John L. Roberts bargained and sold and delivered to H. B. Watson all of the surface rights of the Greenhorn Mining Claim, for the consideration therein named, and the said H. B. Watson thereby became the owner of said surface rights; that subsequently the said H. B. Watson transferred and conveyed to numerous parties, certain lots located by the plat on the surface of said mining claim, and sold the same to the said parties for a valuable consideration, and that there are now, upon said surface rights of the said mining claim, about twenty (20) houses, which are occupied as residences, stores, and for other purposes, and about fifty (50) people occupy the same. That the plaintiff J. W. Jeal is the owner of six (6) lots upon the surface of said mining claim; that he is the owner of several buildings upon said lots, and that he is the owner particularly of a hotel building upon one of said lots, which building is now used by the plaintiff J. W. Jeal. That the said J. W. Jeal is now, and for a long time prior to the filing of the complaint herein, has been the owner of a number of water-tanks located upon a part of the surface of said mining claim, which tanks are used as a water system from which there is distributed water to the persons living upon said lots upon said mining claim, and other persons, and that the said J. W. Jeal is the owner of and entitled to the possession of all of the surface rights of the Greenhorn Mining Claim, by virtue of mesne conveyances from H. B. Watson, except the lots which have been sold, as hereinabove stated, and also excepting Lots 9 and 10 in Block 6 of Atolia townsite, as reserved by H. B. Watson in the deed given by said Watson to said Jeal of said townsite, and was such owner prior to the filing of the complaint in this action. That the said defendants J. M. Rice and Sarah Rice and F. J. Abbott have no right, title, or interest or claim whatsoever in and to the surface rights of said Greenhorn Mining Claim, which were sold by H. B. Watson, and subsequently acquired by J. W. Jeal, as hereinabove stated, either by virtue of the mining location called the 'Lucky Rice,' dated the twentieth day of July, 1917, or otherwise."

The bone of contention, so far as this appeal is concerned, is whether the instrument—plaintiffs' exhibit No. 8—is a conveyance, or only an agreement to convey, respondents holding that it is the former, while appellant insists that it is the latter.

In considering the chain of title here we shall assume, for our present purposes, that the instrument is a conveyance *in praesenti*. (It may also be stated, in passing, that we do not here consider, for any purpose, the so-called "Lucky Rice" location). The chain of title is as follows: E. S. Roberts conveyed an undivided one-half interest to J. M. Rice and J. L. Roberts on December 26, 1915—to each of them an undivided one-fourth. (This deed, although delivered by E. S. Roberts to J. L. Roberts at that time, was never acknowledged or recorded, but, in the year 1917, was handed back by said J. L. Roberts to said E. S. Roberts—which redelivery, however, could not, and did not, amount to a reconveyance of title). On March 4, 1916, J. L. Roberts conveyed an undivided one-fourth interest to J. M. Rice and John Hendricks. On April 29, 1916, E. S. Roberts, J. M. Rice, and J. L. Roberts executed plaintiffs' exhibit No. 8, by the terms of which they conveyed "all the surface rights" to H. B. Watson. On July 20, 1916, John Hendricks conveyed to defendant J. M. Rice an undivided one-eighth interest "in said mining claim." On July 24, 1916, J. M. Rice conveyed to Sarah Rice an undivided one-half interest "in said claim." On August 8, 1916, H. B. Watson conveyed to Geo. E. Hart an undivided one-half interest "in the surface rights," etc., of the same property. On December 2, 1916, H. B. Watson conveyed to J. W. Jeal all his right, title, etc., in and to said property, except lots 9 and 10, block 6. On March 14, 1917, Geo. E. Hart conveyed to J. W. Jeal an undivided one-half interest "in all the surface rights" to this property. On September 15, 1917, J. M. Rice and Sarah Rice conveyed to F. J. Abbott an undivided one-fourth interest in "all rights in said claim." And, finally, on the same date, the same persons—the Rices—conveyed *all* "remaining interests" in the said claim to F. J. Abbott.

At this point, when we come to analyze the various transactions, we find that, even on the assumption that the above-

mentioned instrument, exhibit No. 8, is a conveyance and not merely a contract to convey the various interests in the claim in question are as follows: Mining and mineral rights: E. S. Roberts and F. J. Abbott, each an undivided one-half interest; "surface rights": F. J. Abbott, an undivided one-eighth interest, and J. W. Jeal, an undivided seven-eighths interest, in all except an undivided one-half of lots 9 and 10 in block 6, the other undivided one-half of which belongs to H. B. Watson.

We shall now consider whether plaintiffs' exhibit No. 8 is a conveyance or an agreement to convey. Appellant concedes (although we do not join in such concession) that if the exhibit under consideration is a deed, the finding of the court is correct. It reads as follows:

"This indenture made this 29th day of April, A., D. 1916, by and between H. B. Watson, of the Town of Atolia, San Bernardino County, the party of the 1st part, and J. M. Rice and E. S. Roberts, of the same place, parties of the 2nd part:

"Witnesseth, that for and in consideration of the sum of One Thousand Dollars, Five Hundred Dollars ($500.00) of which is hereby acknowledged as having already been paid by H. B. Watson, party of the 1st part to the said parties of the 2nd part, and the further payment of Five Hundred Dollars ($500.00) additional on or before July 1, 1916, the said Rice and Roberts, parties of the 2nd part, who are the mineral claimants and owners of that certain mining claim known and described in the county records of San Bernardino County and State of California, as the Greenhorn Mining Claim, and more particularly described in Book Forty (40) of the mining records of San Bernardino County, and Page 291, the same having been recorded by request of Clyde Darrow on Feb. 6, 1905, have this day bargained, sold and delivered to H. B. Watson, the party of the 1st part, all the surface rights and privileges as hereinafter mentioned and existing within the boundaries of said Greenhorn Claim. For the purposes of organizing and completing a townsite, known as Atolia Townsite.

'It is especially understood and agreed that this bargain and sale transfers only the surface rights within said area of the boundaries of said Greenhorn claim, which is to be utilized for laying out and surveying of a townsite known

and styled as the Atolia Townsite, which is to be subdivided into lots and blocks, for the erection of buildings, conduct of business, and all such public rights of way for electricity, car or buss lines, telephone, telegraph and water service corporations, etc., as may hereafter be entered into for city or town organization so as to engage in municipal, town or other corporate organization in keeping therewith.

"All mineral, mineral rights and the privileges thereof beneath the surface, extracting and mining the same, are hereby reserved unto the parties of the 2nd part, their heirs or assigns. Said mining operations are to be conducted with due regard to the surface owners and not to interfere with the possessory rights of residents who may purchase lots and engage in business thereon, buildings, street traffic, or maintenance of public thoroughfares, telegraph, telephone, sewers, or other public utilities.

"Upon final payment of the stipulated amount of Five Hundred ($500) dollars, on or before the 1st day of July, 1916, the undersigned mineral owners and claimants of the ground known as the Greenhorn mining claim hereby bind themselves to give a good and sufficient deed to all the surface space and rights appertaining thereto within the area and boundaries of said mining claim as originally located and described in said copies of record, to the said H. B. Watson, party of the 1st part, to have and to hold, his heirs and assigns forever.

"A further covenant and agreement hereby made and understood is that said party of the 1st part hereby agrees to have said Greenhorn claim surveyed, platted and to furnish the finances wherewith same shall be patented so as to issue ultimate warranty deeds to purchasers of surface rights thereon. No liabilities shall be assumed by the parties of the 2nd part in the establishment of said townsite or any expense in connection therewith of any description whatsoever."

So far we have assumed the correctness of the conclusion of the learned trial judge in holding that this exhibit was a deed—a conveyance *in praesenti.* But under this assumption, as we have seen, "all the surface rights," etc., were not conveyed to H. B. Watson. It will be observed from the exhibit which we have just quoted that J. L. Roberts was not mentioned in the body of that instrument, but is

one of those signing it. [1] "A deed signed and acknowledged by persons named therein as grantors, and by others as well, is not the deed of those not mentioned in the body of the instrument as grantors." (*Cordano* v. *Wright*, 159 Cal. 610, [Ann. Cas. 1912C, 1044, 115 Pac. 227].) Indeed, the fact is that J. L. Roberts had previously conveyed whatever interest he had therein to John Hendricks, and Hendricks does not join in this instrument.

[2] To determine whether such an instrument is in itself a conveyance or an agreement to convey, we shall have to inquire for and ascertain, if we can, from the whole instrument, just what the intention of the parties was. "In determining the intention, the first rule is to ascertain whether the language imports a present conveyance, or whether, collecting all its parts, it contemplates a further assurance to pass the title." (8 R. C. L., sec. 8, p. 929.) [3] Applying this rule, we are confronted first of all with language which appears to indicate a transfer *in praesenti*. However, we think when the instrument is considered in its entirety that this is more apparent than real.

Taking first the provision of the instrument under consideration by which the parties of the second part, after complying with certain prerequisites, "bind themselves to give a good and sufficient deed to all the surface space and rights appertaining thereto," etc.: To hold that the instrument itself is a deed conveying property to first party *in praesenti*, renders the clause just quoted nugatory and of no force whatever; while to construe the exhibit as contended for by appellant is to give force to every part thereof. Secondly, we are confronted with the fact that the instrument not only contains the clause just referred to, but is signed by both parties. This is not only unusual in the case of a conveyance *in praesenti*, or a deed, but absolutely unnecessary. Notwithstanding the fact that "the omission of all or any of the formal parts of a deed does not destroy its validity, where enough appears on its face to show that those having an interest intend to convey it, and they join in sealing the instrument, it being sufficient if the matter written is legally set forth in an orderly manner by words which clearly specify the agreement and meaning of the parties, and bind them" (8 R. C. L. 935), we are of the opinion that, taken as a whole, this instru-

48 Cal. App.—50

ment falls far short even of this condition. We hold, therefore, that plaintiffs' exhibit No. 8 is an agreement to convey, and not a conveyance *in praesenti.* (*Ellis* v. *Jeans,* 7 Cal. 409; *Estate. of Goetz,* 13 Cal. App. 198, [109 Pac. 145]; *Powell* v. *Hunter,* 204 Mo. 393, [102 S. W. 1020].)

[4] After trial, but before the court made its findings, etc., leave was granted plaintiffs to amend the third cause of action set forth in their complaint, by striking out the following: "That J. M. Rice, E. S. Roberts and John L. Roberts entered into an agreement, whereby they agreed to sell all of the surface rights of the Greenhorn Mining Claim to H. B. Watson, for a consideration therein named, and plaintiffs allege that said agreement of sale is still in existence and is a valid and binding obligation," and inserting in the place and stead thereof the following: "That J. M. Rice, E. S. Roberts and John L. Roberts *bargained and sold and delivered* all of the surface rights of the Greenhorn Mining Claim to H. B. Watson for a good and valuable consideration, and that said H. B. Watson thereby became the owner of said surface rights." (Italics ours.) This amendment was allowed on the theory that it was a compliance with the proof. The part italicized by us was found in plaintiffs' exhibit No. 8 itself. It is contended that the court erred in permitting this amendment to be made, with which contention we are inclined to agree, for the reason that, in the light of what has been said above, there was no legal evidence before that tribunal justifying the same. Though it be a fact that the words "bargained, sold and delivered" are present in the exhibit referred to, yet, when such instrument is taken as a whole, these words are not of such import, and cannot be construed in such a manner, that an agreement to convey can, by their presence alone, and irrespective of the remaining portions of the exhibit, be converted into a conveyance *in praesenti.*

As must now be obvious, the only persons interested in this appeal are the respondent Jeal and appellant Abbott. Nor are there any other rights or interests involved than the "surface rights," so called, in said property. As already seen, Jeal's claim of title to the surface rights is based solely upon the instruments executed by Watson to Hart, and by Hart to Jeal. It has already been shown that Watson held the property only under and by virtue

of plaintiffs' exhibit No. 8, and that under that instrument he was not the owner and had no legal title to the property at the time such purported conveyances were executed by him—having only such rights as had been accorded him in the exhibit mentioned. Nor does the evidence disclose that he ever became the legal owner at any subsequent time. If plaintiff Jeal did not own the legal title to these "surface rights," etc., the question whether he has or has not paid all that was due under the contract becomes, we think, quite immaterial.

Taking either horn of the dilemma—construing the exhibit considered as a conveyance *in praesenti* or as an agreement to convey—the evidence, for reasons stated, does not support the finding.

The judgment, so far as appellant F. J. Abbott is concerned, is reversed.

Finlayson, P. J., and Weller, J., concurred.